USCA1 Opinion

 

 November 2, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1297 MARVIN M. SMITH, Plaintiff, Appellee, v. MICHAEL MALONEY & MICHAEL FAIR, DEPARTMENT OF CORRECTIONS, Defendants, Appellants. ____________________ ERRATA SHEET The opinion of this Court issued on November 1, 1993, is amended as follows: Page 9: Line 20 - Delete the words, "as there is no dispute,". November 1, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1297 MARVIN M. SMITH, Plaintiff, Appellee, v. MICHAEL MALONEY & MICHAEL FAIR, DEPARTMENT OF CORRECTIONS, Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Boudin, Circuit Judges. ______________ ____________________ Marvin M. Smith on brief pro se. _______________ Nancy Ankers White, Special Assistant Attorney General, and ____________________ Herbert C. Hanson, Senior Litigation Counsel, Department of ____________________ Correction, on brief for appellants. ____________________ ____________________ Per Curiam. In this appeal we are asked to decide __________ whether the defendants are, as a matter of law, entitled to invoke the defense of qualified immunity in resisting plaintiff's pro se action under 42 U.S.C. 1983. Mitchell ___ __ ________ v. Forsyth, 472 U.S. 511, 530 (1985). We conclude that the _______ district court correctly decided that the contours of the law were well known at the time about which plaintiff complains, and therefore affirm. I. _ Plaintiff Marvin M. Smith, a Massachusetts prisoner, sued the defendants, state prison officials, for taking two years to forward his legal materials after Smith's transfer from state to federal custody on February 5, 1986. At the time of the transfer, plaintiff was attempting to pursue post-conviction relief from his state conviction, and had several civil actions pending. On March 1, 1986, he wrote to the state prison property office inquiring when he could expect to receive his personal property, particularly his legal materials, asserting that the delay was threatening court deadlines. When no response came by March 18, 1986, plaintiff wrote to defendant Maloney, then the Superintendent of the state prison, about the forwarding of his personal property. The letter reiterated plaintiff's lack of access to his legal documents, and again warned that it was impossible to meet pressing court dates because his legal -4- materials were being held at the state prison. On March 19, plaintiff wrote a similar letter to defendant Fair, the then Commissioner of the Massachusetts Department of Correction ("DOC"). Defendant Maloney's April 1, 1986 response to the March 18 letter advised that "your property must be picked up by your family." Plaintiff's letter to defendant Fair was referred to Pires, a DOC grievance coordinator, who, on April 24, 1986, informed plaintiff that he would check into "the problem with your property." In a May 13, 1986 letter to Pires, plaintiff complained, inter alia, that he had not _____ ____ received his legal property or legal mail since the transfer, and that federal prison administrators would not allow his family to send his legal property.1 Pires did not reply to that letter. However, on June 9, 1986, a DOC Deputy Commissioner approved a Pires' memorandum outlining defendant Maloney's agreement that his facility would assume any costs in forwarding property of inmates transferred to the federal prison system, and would also "ensure that all permissible property is forwarded." ____________________ 1. Plaintiff also relies on 103 C.M.R. 403.16(2) which states in relevant part: "Whenever an inmate is transferred to another correctional institution all personal property approved for retention at the receiving institution shall be transferred along with him/her or as soon as practicable thereafter." -5- In July 1987, plaintiff still had not yet received his legal property and filed this 1983 suit against Fair and Maloney in their individual and official capacities. The complaint alleged that because the federal prison system was not equipped to assist him with pending Massachusetts cases, the continuing refusal to forward his legal property was a deprivation of property without due process and a denial of meaningful access to the courts. On March 15, 1988, twenty- five months after the transfer to federal custody, plaintiff's legal materials were forwarded to the federal authorities. Defendant Maloney's accompanying letter acknowledged plaintiff's federal lawsuit seeking the return of his legal property, and characterized the delay as caused by "administrative miscommunication at our end." In 1989, plaintiff was returned to the state prison system. In 1990 defendants' initial motion for summary judgment on the due process and access to the courts claims was denied; an accompanying claim of inadequate federal prison library facilities was declared moot since plaintiff was no longer in federal custody. In 1992, defendants' renewed motion for summary judgment on, inter alia, qualified _____ ____ immunity grounds was denied, and the case was ordered to proceed to trial. Our review on this interlocutory appeal from the denial of a qualified immunity defense is de novo, and following the usual summary judgment commands, we view -6- all facts and reasonable inferences from the record as a whole in plaintiff's favor.2 Cookish v. Powell, 945 F.2d _______ ______ 441, 443 (1st Cir. 1991). II. __ Plaintiff's complaint alleges, with sufficient particularity, a claim for which relief under 1983 is available: the right to meaningful and effective access to the courts. Bounds v. Smith, 430 U.S. 817, 822-24 (1977). ______ _____ We have held that allegations of intentional refusal to return an inmate's legal materials state a cause of action under 1983. Simmons v. Dickhaut, 804 F.2d 182, 184 (1st _______ ________ Cir. 1986). In determining whether the defendants are entitled to the protection of qualified immunity from suit, the inquiry is essentially objective: whether a "reasonable [official] could have believed [the failure to forward plaintiff's legal materials for two years] to be lawful, in light of clearly established law and the information the [prison officials] possessed." Anderson v. Creighton, 483 ________ _________ U.S. 635, 641 (1987). Plaintiff bears the initial burden to show that the legal rules regarding the right of access at ____________________ 2. We note that plaintiff's motion for leave to file a first amended verified complaint, proffered before the district court acted upon defendants' renewed motion for summary judgment, was denied after this appeal was noticed. While defendants argue that the amended verified complaint is outside the record on appeal, since plaintiff expressly included it as part of his opposition to summary judgment, it is properly before us. See Sheinkopf v. Stone, 927 F.2d ___ _________ _____ 1259, 1262 (1st Cir. 1991). -7- issue here were sufficiently clear before the defendants acted or, in this case, failed to act. Davis v. Scherer, 468 _____ _______ U.S. 183, 197 (1984). Once that threshold is passed, the defendants' conduct is compared to what a reasonable official would understand was legally required during the relevant period, from February 1986 through March 1988. To that end, a "court should ask whether the [officers] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed [subsequently] . . . . Hunter v. Bryant, ______ ______ 112 S. Ct. 534, 537 (1991); see also Frazier v. Bailey, 957 ___ ____ _______ ______ F.2d 920, 929 (1st Cir. 1992); Cinelli v. Cutillo, 896 F.2d _______ _______ 650, 654 (1st Cir. 1990). If the particular access right at issue here was clearly established at the time of the alleged deprivation, it can be "presume[d] that the defendant knew, or should have known that his conduct was beyond the pale." Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992). __________ _______ III. ___ Applying this standard, we have little difficulty concluding that plaintiff has satisfied the burden to demonstrate that the access right at issue was clearly established during the relevant period. In opposing defendants' request for summary judgment based on qualified -8- immunity,3 plaintiff sufficiently identified a "universe of authority" relevant to his access claim. Elder v. Holloway, _____ ________ 975 F.2d 1388, 1393 (9th Cir. 1991), cert. granted, 113 S. _____ _______ Ct. 3033 (1993). We have not required a plaintiff opposing a qualified immunity defense to cite cases in which the precise conduct at issue had been found unlawful. Germany v. Vance, _______ _____ 868 F.2d 9, 16 (1st Cir. 1989). "It is enough, rather, that there existed case law sufficient to clearly establish that if a court were presented with such a situation, the court ____ would find that plaintiff's rights were violated." Hall v. ____ Ochs, 817 F.2d 920, 925 (1st Cir. 1987). ____ By 1986, "[m]any courts [had] found a cause of action for violation of the right of access . . . where it was alleged that prison officials confiscated and/or destroyed legal materials." Simmons, 804 F.2d at 183 _______ (collecting cases). See also Bonner v. Coughlin, 517 F.2d ___ ____ ______ ________ 1311, 1320 (7th Cir. 1975) (pre-Bounds case assumes that ______ intentional taking of prisoner legal materials resulting in access interference may violate due process); Ruiz v. ____ ____________________ 3. In an accompanying affidavit, plaintiff averred that he had four lawsuits pending at the time of his February 1986 transfer to federal custody. Court documents, attached as exhibits, show that two of these cases were later dismissed for lack of prosecution, a direct consequence, plaintiff maintains, of the two-year deprivation of his legal materials which included trial transcripts, pleadings, legal documents, research materials and exhibits. For the same reason, plaintiff attests that he could not effectively prosecute the two other pending actions. -9- Estelle, 679 F.2d 1115, 1153 (5th Cir. 1982) (access to the _______ courts includes right to access to those "accessories without which legal claims cannot be effectively asserted"), cert. _____ denied, 460 U.S. 1042 (1983); Morello v. James, 810 F.2d 344, ______ _______ _____ 346 (2d Cir. 1987) (complaint of official taking, in 1983, of pro se legal materials and work product stated a Bounds ___ __ ______ claim); Green v. Johnson, 977 F.2d 1383, 1389-90 (10th Cir. _____ _______ 1992) (pre-1985 seizure of pro se legal materials followed by ___ __ dismissal of several of inmate's lawsuits stated a cognizable denial of access claim). And, in Germany, where a social _______ worker's failure to disclose important information was found to preclude qualified immunity, we concluded: "In 1980, the contours of the right of access to the courts were sufficiently clear so that a reasonable official would understand that the right would be violated by the intentional or recklessly indifferent withholding of potentially exculpatory information from an adjudicated delinquent or from the court itself." Germany, 868 F.2d at _______ 16. Thus, although we have not addressed the particular question whether state prison officials' intentional or deliberately indifferent withholding of a transferred inmate's legal materials implicates a Bounds right, in light ______ of the state of the relevant law in February 1986, we conclude that the unlawfulness of such conduct was -10- sufficiently established at that time and would have been apparent to a reasonable official. See Patterson v. Mintzes, ___ _________ _______ 717 F.2d 284, 288 (6th Cir. 1983) (unrebutted allegations of delay in forwarding transferred inmate's legal papers constitute cognizable 1983 claim); see also Crisafi v. ___ ____ _______ Holland, 655 F.2d 1305, 1309-10 (D.C. Cir. 1981). Moreover, _______ plaintiff's letters would have alerted a reasonable prison official that some action needed to be taken to protect plaintiff's access rights. See Nelson v. Overberg, 999 F.2d ___ ______ ________ 162, 166 (6th Cir. 1993). IV. __ Defendants have posited no governmental interest or penological objective justifying the delayed transfer of plaintiff's legal materials. Turner v. Safley, 482 U.S. 78, ______ ______ 89 (1987). Defendants' arguments here that their conduct was at most negligent or that they were minimally involved in the claimed violations are not properly before us: the subjective beliefs or motives of a government official are simply irrelevant to the qualified immunity inquiry. Anderson, 483 U.S. at 641; Buenrostro, 973 F.2d at 42; Floyd ________ __________ _____ v. Farrell, 765 F.2d 1, 4-5 (1st Cir. 1985); see also Coffman _______ ___ ____ _______ v. Trickey, 884 F.2d 1057, 1063 (8th Cir. 1989) ("In deciding _______ [the qualified immunity] issue, a court must consider the information upon which the official acted, although this is not to be confused with a review of the official's subjective -11- intent."), cert. denied, 494 U.S. 1056 (1990). Consequently, _____ ______ the district court correctly decided that defendants are not entitled to qualified immunity on plaintiff's access to the courts claim. Affirmed. ________ Appellee's request for double costs is denied. ______ Appellants' motion to strike first amended verified complaint from appellee's supplemental appendix is denied. ______ Appellee's cross-motion to strike portions of appellants' reply brief is denied. ______ Appellants' motion to amend argument heading in brief is allowed. _______ Appellee's motion to supplement appendix and for sanctions is denied. ______ -12-