**Nydia Ines TORRES OCASIO, et al., Plaintiffs,**

v.

**Ciprian MELENDEZ, et al., Defendants.**

**No. CIV. 02–2379(SEC).**

United States District Court, D. Puerto Rico.

Sept. 16, 2003.

heirs to initiate termination pursuant to § 304. *Id.*

Homero González–López, San Juan, PR, for Plaintiffs.

Juan M. Frontera–Suau, Ana M. Margarida–Julia, Dept. of Justice, Federal Litigation Division, Celina Romany–Siaca, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

The case before us arises from the allegedly discriminatory transfer of Plaintiff from her position as Temporary Manager with the Right to Work Administration (RWA). Plaintiff alleges that she was discriminated against on the basis of her political affiliation, and has brought suit against several individual Defendants, in both their personal and official capacities, under Sections 1983 and 1985 of the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985. Defendants have moved to dismiss the complaint on several grounds (**Docket ## 17 and 18**). First, they argue that all claims against them, in their official capacities should be dismissed pursuant to their Eleventh Amendment immunity. Next, they argue that all claims against them in their personal capacity should be dismissed for failure to state a claim, because Plaintiffs have failed to meet the heightened pleading standard for civil rights cases established by the First Circuit Court of Appeals in *Judge v. City of Lowell*, 160 F.3d 67 (1st Cir.1998), and has not shown that their claims survive Defendants' entitlement to qualified immunity. Lastly, Defendants argue that Plaintiffs' causes of action under Section 1985 should also be dismissed due to Plaintiffs' failure to adequately plead a conspiracy to discriminate against them on the basis of a classification protected by Section 1985.

Plaintiffs, on the other hand, have filed an opposition to said motions (**Docket # 26**), and Defendants have duly replied to said opposition (**Docket # 29**). Having reviewed all the parties' filings, as well as the relevant case law, Defendants' motions will be **GRANTED in part and DENIED in part.**

### Claims Against Defendants in Their Individual Capacity

Plaintiffs have brought suit against Ciprián Meléndez, María del Carmen Fuentes, Victor Rivera, Myrna Crespo Saavedra and Sila María Calderón, in their official capacities. However, the Eleventh

Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Am. XI. Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State. *See Board of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001); *see also Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Even though the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. *See Jusino Mercado v. Commonwealth of Puerto Rico,* 214 F.3d 34 37 (1st Cir.2000); *Ortiz–Feliciano v. Toledo Dávila,* 175 F.3d 37, 39 (1st Cir. 1999); *Futura Development v. Estado Libre Asociado,* 144 F.3d 7,12–13 (1st Cir. 1998); *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d 506, 516 (1st Cir.1987); *Ramírez v. Puerto Rico Fire Services,* 715 F.2d 694, 697 (1st Cir.1983).

▮ The Eleventh Amendment bar extends to governmental instrumentalities, which are an arm or "alter ego" of the State. *See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R.,* 818 F.2d 1034, 1036 (1st Cir.1987); *Ochoa Realty Corp. v. Faría,* 618 F.Supp. 434, 435 (D.P.R.1985); *Pennhurst State School Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Mt. Healthy City School District v. Doyle,* 429 U.S. 274,

280–281, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Ursulich v. Puerto Rico National Guard,* 384 F.Supp. 736, 737–738 (D.P.R. 1974). In addition, the Eleventh Amendment also protects state officials in their official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity for monetary relief is an action for the recovery of money from the State. *Ford Motor v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Hence, a claim against a state official for monetary relief is, in essence, a claim against the State.

Furthermore, the Civil Rights Act provides a cause of action against "[e]very **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law..." 42 U.S.C. § 1983 (emphasis added). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) *citing Carey v. Piphus,* 435 U.S. 247, 254–257, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

▮ Therefore, Section 1983 provides a federal cause of action against **persons** who violate an individual's civil rights under color of state law. Not everyone, though, is a person under Section 1983. For example, the Supreme Court has held that a municipality is not a **person** within the meaning of Section 1983. *Monroe v.*

*Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Similarly, the United States and federal agencies are not persons within the meaning of Section 1983. *Accardi v. United States,* 435 F.2d 1239 (3d Cir.1970); *LaRouche v. City of New York,* 369 F.Supp. 565 (S.D.N.Y.1974); *Hoffman v. HUD,* 519 F.2d 1160 (5th Cir.1975). And, most importantly to the case at bar, states, its instrumentalities, and its officials when sued in their official capacity, **are not persons under Section 1983.** *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Cheramie v. Tucker,* 493 F.2d 586 (5th Cir.1974). Therefore, 42 U.S.C. § 1983 does not apply to these Defendants' actions.

■ Plaintiffs have brought Civil Rights Act claims for money damages against the individual Defendants in their official capacity. Pursuant to the Eleventh Amendment, as discussed above, and pursuant to the definition of "person" under the Civil Rights Act, Plaintiffs' causes of action for money damages under Section 1983 of the Civil Rights Act against Defendants Ciprián Meléndez, María del Carmen Fuentes, Victor Rivera, Myrna Crespo Saavedra and Sila María Calderón, in their official capacities, will be **DISMISSED WITH PREJUDICE.** However, we must remember that claims for prospective equitable relief against a state and state officials in their official capacity are not prohibited by the Eleventh Amendment under the well-known doctrine expounded in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Therefore, the claims against the individual Defendants in their official capacity, seeking prospective equitable relief, will survive.

**Claims Against the Individual Defendants in Their Personal Capacity**

Plaintiffs also bring claims under Section 1983 against the same Defendants named above, but in their personal capacity.[1] The Court believes that these claims should be split in two groups: 1) claims against María del Carmen Fuentes and Myrna Crespo Saavedra; and 2) claims against Ciprián Meléndez, Victor Rivera and Sila María Calderón. But, first, let us consider the standard of review applicable to this motion to dismiss for failure to state a claim.

*Standard of Review*

■ Defendants claim that all actions against them in their personal capacity fail to state a claim under the heightened pleading standard for Section 1983 cases set by the First Circuit Court of Appeals in *Judge v. City of Lowell,* 160 F.3d 67 (1st Cir.1998). However, there is some disagreement in this Circuit on whether the standard set in *Judge* has been abrogated by the recent U.S. Supreme Court decision in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Even though *Swierkiewicz* was a case dealing specifically with heightened pleading standards in the context of a Title VII claim for employment discrimination and not in a Section 1983 case involving qualified immunity, it is reasonable to think that its holding might be extensive to the present case. Even though the Court of Appeals for the First Circuit has indeed acknowledged and applied the holding in *Swierkiewicz* in the context of an employment discrimination action brought under Title VII, the specific question of the effect of *Swierkiewicz* on Section 1983 cases involving a qualified immunity defense has yet to be addressed by the First Circuit Court. *Gorski v. New Hampshire Department of Corrections,* 290 F.3d 466 (1st Cir.2002). However, this Court has held, at least once, that, absent specific

---

**1.** Plaintiffs have also joined Defendants' spouses and conjugal partnerships.

guidance from the First Circuit on this issue, it is reluctant to conclude that *Swierkiewicz* abrogated the holding in *Judge* with respect to Section 1983 cases. *Data Research Corp. v. Rey Hernández*, 261 F.Supp.2d 61 (D.P.R.2003). On the other hand, two of our sister District Courts from the First Circuit have already interpreted *Swierkiewicz* in a very broad manner, and have rejected a heightened pleading standard in cases involving claims under the Americans with Disabilities Act and the Federal Tort Claims Act. *See Greenier v. PACE, Local No. 1188*, 201 F.Supp.2d 172 (D.Me.2002) and *Limone v. U.S.*, 271 F.Supp.2d 345 (D.Mass.2003). Under these circumstances, we are hesitant to apply the heightened pleading standard until this question is ultimately resolved by the First Circuit Court. Consequently, we will analyze the situation in the present case under the typical motion to dismiss standard.

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

 But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) *citing Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508 (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996)). *See also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Courts "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993).

 Furthermore, Defendants also assert their entitlement to qualified immunity. Qualified immunity constitutes a right not to stand trial or face the burdens of litigation. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The procedures regarding qualified immunity allow for judicial review, *via* certiorari, on the qualified immunity issue. *Id.* at 207, 121 S.Ct. 2151. Thus, in order to avoid subjecting state officials to unnecessary and burdensome discovery or trial proceedings, district courts and courts of appeal should rule on the qualified immunity issue from the beginning, focusing on the characterization of the constitutional

right in controversy and deciding, whether from the facts alleged in the complaint, a constitutional violation could be found. *See Id.* at 201, 121 S.Ct. 2151; *Judge,* 160 F.3d at 73.

A defendant can establish a qualified immunity defense in one of three ways:

First, the defense should be sustained if the court finds that it was not clear at the time of the official acts that the interest asserted by plaintiff was protected by a federal statute or the Constitution. Second, even if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to immunity as a matter of law, if it was not clear at the time of the acts at issue that an exception did not permit those acts. Third, even if the contours of the plaintiffs federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if, it was objectively reasonable for him to believe that his acts did not violate those rights.

*Walsh v. Franco,* 849 F.2d 66, 69 (2nd Cir.1988), *citing Robison v. Via,* 821 F.2d 913, 920–921 (2nd Cir.1987). Thus, the qualified immunity inquiry is composed of a three-prong test: 1) does the complaint state a claim for relief of a constitutional right?; 2) if it does, was the constitutional right clearly established at the time of the facts alleged in the complaint?; and 3) was it objectionably reasonable for the officer to believe his actions did not violate the claimant's federally protected right?

*Section 1983—Substantive Law Applicable to this Case*

Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *See Graham v. M.S. Connor,* 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds* by *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gutiérrez Rodríguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989); *Saugus v. Voutour,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir.1985).

Second, a plaintiff must show that the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt,* 451 U.S. at 535, 101 S.Ct. 1908; *Gutiérrez Rodríguez,* 882 F.2d at 559. This second prong has two aspects: 1) there must have been an actual deprivation of the plaintiff's federally protected rights; and 2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. *See Gutiérrez Rodríguez,* 882 F.2d at 559; *Voutour,* 761 F.2d at 819. In turn, this second element of causal connection requires that the plaintiff establish: 1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, *Monell v. Department of Social Services,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gutiérrez Rodríguez,* 882 F.2d at 562; *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir. 1989); and 2) that the defendant's conduct was intentional, *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional

rights. *See Gutiérrez Rodríguez*, 882 F.2d at 562.

 In the case at bar, Plaintiff Torres Ocasio claims that several of her constitutional rights were violated by Defendants. Plaintiff first claims that her right to freedom of expression and association under the First Amendment was abridged. Political discrimination restrains freedom of belief and association, core activities protected by the First Amendment. *See Elrod v. Burns*, 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). To prevail on a political discrimination claim against Defendants, Plaintiff must establish that: 1) she engaged in constitutionally protected conduct; and 2) that this conduct was a substantial or motivating factor in an adverse employment decision affecting her. *See Mt. Healthy City School District Board v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–García v. Rodríguez*, 212 F.3d 69, 74 (1st Cir.2000). To meet this burden, Plaintiff must show that there is a causal connection linking Defendant's conduct to her political beliefs. *See LaRou v. Ridlon*, 98 F.3d 659, 662 (1st Cir.1996).

 Plaintiff also alleges a violation of her equal protection rights. The complaint avers that she was denied the right to equal protection under the law pursuant to the Fifth and Fourteenth Amendment of the U.S. Constitution. However, the party who asserts that governmental action violates the Equal Protection Clause must show that she is "the victim of intentional discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In order to state a claim under the Equal Protection Clause, Plaintiff must prove not only that Defendants were aware of her political affiliation at the time of their actions, but also that they acted **because** of her political affiliation. *See Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

 Lastly, Plaintiff alleges a deprivation of her Due Process rights. Under the Fourteenth (and or Fifth) Amendment of the Constitution, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IV, § 1. In order to establish a procedural due process claim under 42 U.S.C. § 1983, Plaintiff must first prove that she has a property interest as defined by state law and, second, that Defendants, acting under color of state law, deprived her of that property interest without a constitutionally adequate process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *PFZ Properties, Inc. v. Rodríguez*, 928 F.2d 28, 30 (1st Cir.1991).

### Defendants Fuentes and Crespo Saavedra

Plaintiffs allege in their complaint that Defendant Fuentes, who was the Director of the RWA at the time of the allegedly discriminatory transfer; and Defendant Crespo Saavedra, who was the Director of Human Resources at the RWA at the same time, intentionally discriminated against Plaintiff Torres Ocasio on the basis of her political affiliation. The allegations which, Plaintiffs argue, establish such intentional discrimination are that Plaintiff was a known member of the New Progressive Party (NPP), that Defendants were members of the Popular Democratic Party (PDP), that the person appointed to replace Plaintiff was not qualified for the job and was only appointed due to his affiliation to the PDP, and a conclusory allegation that this was all done in an intentionally discriminatory fashion.

■ Defendants argue that these bare statements and conclusions of law, without further mention of specific acts by Defendants which could lead to an inference of discriminatory animus, are not enough to state a claim under Fed.R.Civ.P. 12(b)(6), or to surpass their qualified immunity. Given the current state of the law, we disagree. The Supreme Court, in *Swierkiewicz*, held that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." *Swierkiewicz*, 534 U.S. at 511, 122 S.Ct. 992. A plaintiff must only plead enough facts to "give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512, 122 S.Ct. 992.

■ Even though the allegations in Plaintiffs' complaint are indeed quite devoid of reference to specific facts or actions by Defendants which would point towards discriminatory animus, the Court must recognize that the pleadings do give fair notice to Defendants of the claims being brought against them. Furthermore, it is true that direct evidence of discrimination need not be presented in order to prove a case under Section 1983; circumstantial evidence might suffice. In fact, were this a case of discrimination under Title VII of the Civil Rights Act, the allegations expounded by Plaintiffs would serve to establish a *prima facie* case of intentional discrimination under the standard set out in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiffs have averred that Plaintiff Torres Ocasio belonged to a protected class (her political affiliation, in this case with the NPP), that she was subjected to an adverse employment decision, and that she was replaced by someone outside the protected class (in this case a member of the PDP). Even though the *McDonnell Douglas* test is inapplicable to the case at bar, its logic convinces the Court that Plaintiffs pleadings pass the more lenient pleading requirements set out in *Swierkiewicz*. Consequently, Defendants Fuentes and Crespo Saavedra's motions to dismiss the causes of action against them in their personal capacity are **DENIED.**

Since the federal claims against these Defendants survive, the Court will choose to exercise its supplemental jurisdiction over the Commonwealth claims against them, in the interest of judicial efficiency and economy.

*Defendants Meléndez, Rivera and Calderón*

Notwithstanding the discussion above, we believe that the strength of the circumstantial inferences drawn from Plaintiffs' allegations decreases as the particular Defendants involved become more and more causally removed from the employment decisions which have allegedly resulted in Plaintiffs' damages. We are hesitant to dismiss the causes of action against Defendants Fuentes and Crespo Saavedra, at this time, **because they were Plaintiff Torres Ocasio's supervisors, and were directly involved in the decision-making process which led to her transfer.** The same is not true of the other three individual Defendants.

■ In the case of Defendants Meléndez, Rivera and Calderón, this Court believes that Plaintiffs have failed to plead even the most minimal allegations which could lead to a reasonable inference of intentional discrimination on their part. Defendant Meléndez was the individual who replaced Plaintiff Torres Ocasio in her position as Temporary Manager. However, Plaintiff does not allege at any point that Defendant Meléndez actually knew that she was being transferred because of her political affiliation, or that he was only replacing her because of his political affiliation. In fact, since Defendant Meléndez was not Plaintiff's supervisor, he had no

power to transfer her or otherwise cause harm to Plaintiffs through an adverse employment action. There are simply no allegations which could possibly establish a causal link between Defendant Meléndez's actions and Plaintiff's transfer. Under these circumstances, the Section 1983 claim against Defendant Meléndez, in his personal capacity, must be **DISMISSED WITH PREJUDICE.**

■ The situation of Defendants Rivera and Calderón is somewhat similar. Although these Defendants did have the power to order Plaintiff's transfer, there is no indication whatsoever in the complaint that they had any involvement in this decision. Plaintiffs cannot argue, nor do they allege, that Governor Calderón and Mr. Rivera, who was the head of the Department of Labor at the time, participate in the day-to-day personnel decisions of the RWA. As they point out in their motions, the RAW is an independent arm of the Department of Labor which was granted a degree of autonomy by its organic act, Law No. 115 of June 21, 1968, as amended, 29 P.R. Laws. Ann. §§ 1102 *et seq.* Plaintiffs have made no allegations which would indicate that these Defendants decided to override the RWA's autonomy regarding its personnel decisions and involve themselves in the transfer of Plaintiff Torres Ocasio. Absent any such specific allegations, we find it unreasonable to just assume that these Defendants participated in any way in the decision-making process that led to Plaintiff's transfer.

■ Consequently, the only way in which these Defendants could be held liable is on a theory of supervisory liability or *respondeat superior.* Regarding such a claim, we find that the following discussion is particularly on point, and will, therefore, liberally quote it:

> It is axiomatic that section 1983 imposes liability only upon those who actually cause a deprivation of rights. *See Malley v. Briggs,* 475 U.S. 335, 341[, 106 S.Ct. 1092, 89 L.Ed.2d 271] (1986); *Camilo–Robles v. Zapata,* 175 F.3d 41 (1st Cir.1999). Supervisory liability may not be grounded upon a theory of respondeat superior. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658[, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611] (1978); *Figueroa–Torres v. Toledo–Dávila,* 232 F.3d 270, 279 (1st Cir.2000); *Febus–Rodríguez v. Betancourt–Lebron,* 14 F.3d 87, 91(1st Cir.1994). Thus, "[g]iven the lack of respondeat superior liability under Section 1983, a supervisor's liability is not for the [constitutional deprivation in itself] ... but for distinct acts or omissions that are a proximate cause of [said deprivation]." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *see also Figueroa v. Aponte-Roque,* 864 F.2d 947, 953 (1st Cir.1989). The supervisor's conduct or inaction must have been intentional, *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir. 1986), grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." *Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989); *Gaudreault v. Salem,* 923 F.2d 203, 209 (1st Cir.1990). "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *See Febus–Rodríguez v. Betancourt–Lebrón,* 14 F.3d 87, 92 (1st Cir.1994). Moreover, "an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials," must be established. *Gutiérrez–Rodríguez,* 882 F.2d at 562.

*Alvarez Sepúlveda v. Conmonwealth of Puerto Rico,* 218 F.Supp.2d 170, 175–176 (D.P.R.2002) (some citations omitted).

Without some kind of averment that causally or logically links these Defendants' actions to the events alleged in the complaint, there is no liability that could attach to them as per the facts in this case. Therefore, all Section 1983 claims against Defendants Victor Rivera and Sila María Calderón, in their personal capacity, will also be **DISMISSED WITH PREJUDICE.**

### Claims of Conspiracy to Intentionally Discriminate Under Section 1985

Plaintiffs also bring claims pursuant to Section 1985 of the Civil Rights Act, 42 U.S.C. § 1985, for a conspiracy to engage in intentional discrimination. Section 1985(3) prohibits persons from conspiring to deprive any person, or any class of persons, of their constitutional rights. To succeed on a Section 1985(3) claim, a plaintiff is required to prove: 1) the existence of a conspiracy; 2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws; 3) an overt act in furtherance of the conspiracy; and 4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996).

An additional requirement has been stated, "in order to avoid having Section 1985(3) transformed into a 'run of the mill' federal tort." *Reyes v. Municipality of Guaynabo,* 59 F.Supp.2d 305, 309 (D.P.R.1999). Thus, a party who wishes to prevail on a Section 1985(3) claim must also prove that there is "some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Id.*

In the case at bar, Plaintiffs have failed to even allege the existence of a conspiracy or a conspiratorial purpose to deprive Plaintiff Torres Ocasio of her constitutional rights. Furthermore, this Court has previously held that "[b]eing a member of a political party does not constitute [membership] in a protected class envisioned by Congress when it created Section 1985(3)." *Id.* at 310. As such, Section 1985(3) is inapplicable to the case at bar, and all claims brought under this statute will be **DISMISSED WITH PREJUDICE.**

### Supplemental Claims

Lastly, as to the pending pendent jurisdiction claims against Defendants Meléndez, Rivera, and Calderón, it is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims against these Defendants warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in *Gibbs* "seems to clearly require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." *Snowden v. Millinocket Regional Hosp.,* 727 F.Supp. 701, 709 (D.Me. 1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit." *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991).

Although District Courts are not obliged to dismiss pendent state law

claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 5, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *citing Gibbs,* 383 U.S. at 726–27, 86 S.Ct. 1130; *see also Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 896 (1st Cir.1992); *Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir.1992); *Figueroa Ruiz v. Alegria,* 896 F.2d 645 (1st Cir. 1990); *cf. Vega v. Kodak Caribbean,* 3 F.3d 476, 478 (1st Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 47 (1st Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were properly dismissed under the rule of *United Mine Workers v. Gibbs*").

Supplemental jurisdiction should be declined in this case against Defendants Meléndez, Rivera, and Calderón, in view that the state law claims substantially predominate over the federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon,* 484 U.S. at 350 n. 5, 108 S.Ct. 614, citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130. Since Plaintiffs are not enti-

tled to any award under Section 1983 with respect to Defendants Meléndez, Rivera, and Calderón, in their personal capacity, the only award Plaintiffs could, in any event, pursue against them would be under the Commonwealth statutes. Therefore, Plaintiffs' claims against Defendants Meléndez, Rivera, and Calderón, under the laws and the Constitution of the Commonwealth of Puerto Rico will be **DISMISSED WITHOUT PREJUDICE.**

### Conclusion

For all the reasons discussed above, Defendants' motions are **GRANTED in part and DENIED in part.** Plaintiffs' causes of action for money damages under Section 1983 of the Civil Rights Act against Defendants Ciprián Meléndez, María del Carmen Fuentes, Victor Rivera, Myrna Crespo Saavedra and Sila María Calderón, in their official capacities, will be **DISMISSED WITH PREJUDICE.** Furthermore, the Section 1983 claims against Defendants Ciprián Meléndez, Victor Rivera, and Sila María Calderón, in their personal capacities, will also be DISMISSED WITH PREJUDICE. All claims brought under Section 1985 of the Civil Rights Act against all Defendants will also be **DISMISSED WITH PREJUDICE.** And lastly, Plaintiffs' claims against Defendants Ciprián Meléndez, Victor Rivera, and Sila María Calderón, under the laws and the Constitution of the Commonwealth of Puerto Rico will be **DISMISSED WITHOUT PREJUDICE.**

On the other hand, the Section 1983 claims against the individual Defendants in their official capacity, seeking prospective equitable relief, as well as the Section 1983 claims, and the Commonwealth law claims, against Defendants Myrna Crespo Saavedra and María del Carmen Fuentes, in their personal capacities, will survive. The

Court will issue a Case Management Order forthwith.

**SO ORDERED.**